THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.*
CORNELIUS J. DACEY, Defendant.

Court of General Sessions of the County of New York, March 21, 1938.

Thomas E. Dewey, District Attorney [George G. Hunter, Deputy Assistant District Attorney, of counsel], for the plaintiff.

Samuel J. Lowenstein, for the defendant.

STREIT, J. The defendant was convicted of the crime of grand larceny in the first degree before me on the 7th day of December, 1937.

On February 7, 1938, the district attorney filed an information dated February 4, 1938, charging the defendant with being a second offender under sections 1941–1943 of the Penal Law.

The information, as amended, charges the defendant with having been convicted of the crime of larceny on the 5th day of June, 1931, in the Superior Court, county of Middlesex, State of Massachusetts.

The statute (Penal Law, § 1941) provides that "A person, who, after having been once or twice convicted within this State, of a felony, * * * or, under the laws of any other State, government, or country, of a crime which, if committed within this State, would be a felony, commits any felony, within this State, is punishable upon conviction of such second or third offense."

Section 1943 of the Penal Law provides: " If at any time, either after sentence or conviction, it shall appear that a person convicted of a felony has previously been convicted of crimes as set forth * * * in section nineteen hundred and forty-one [that is, a felony within this State, or, under the laws of any other State, of a crime which, if committed within this State would be a felony] * * * it shall be the duty of the district attorney * * * to file an information * * *. Whereupon, the court in which such conviction was had shall cause the said person, * * * to be brought before it and shall inform him of the allegations contained in such information and of his right to be tried as to the

truth thereof according to law, and shall require such offender to say whether he is the same person as charged in such information or not. If he says he is not the same person or refuses to answer, or remains silent, his plea, or the fact of his silence, shall be entered of record *and a jury shall be empanelled to inquire whether the offender is the same person mentioned in the several records as set forth in such information.* If the jury finds that he is the same person or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he is the same person, the court shall sentence him to the punishment prescribed."

The defendant stood mute on said information, and on February 21, 1938, the jury in this court found the defendant to be the same person convicted in Massachusetts, as alleged in the information.

The defendant contends:

(1) That he now has a right to introduce evidence showing that in actuality the amount really involved in the Massachusetts indictment was less than $100, and that he is not confined to the facts charged in the indictment upon which the previous conviction was had.

(2) That the information does not contain facts from which the conclusion could be justifiably drawn that the Massachusetts crime would be a felony in this State if committed here.

(3) That if, under the previous indictment, the crime which was committed, *by any possibility* could have been such as would not be a felony in New York, the information must be dismissed.

(4) That under the Massachusetts law, the value as alleged in the indictment does not mean " market value " as distinguished from the meaning of " value " under the New York law.

The entire proceeding under this information is an aid to the court to determine what sentence to impose upon the defendant. (*People* v. *Caruso*, 249 N. Y. 302.)

The propriety of inflicting severer punishment upon old offenders has long been recognized in this country and in England. Statutes providing for such increased punishment were enacted in Virginia and New York as early as 1796 and in Massachusetts in 1804.

The punishment is for the new crime only, but is heavier if he is an habitual criminal. The allegation of previous convictions is not a distinct charge of crimes, but is necessary to bring the case within the statute, and goes to the punishment only. (*Graham* v. *Gowasky*, 244 N. Y. 451.)

The only question for a jury to determine is, is he the same person mentioned in the several records as set forth in the information? This is the only question to be submitted to the jury, and the only question that they are to answer by their verdict. " The guilt or

innocence of the defendant under the previous convictions does not enter into the case at all." (*People* v. *Gowasky, supra,* at p. 464.)

All questions or issues, except that of identity, which may arise in connection with the trial of the information, are for the court.

The court must satisfy itself as a matter of law that, by competent records adduced before it, the defendant was convicted of a crime which, if committed within this State, would be a felony.

Where the defendant was convicted of a crime under the laws of another State or government, or under the Federal laws, it frequently becomes necessary to ascertain the law of the foreign jurisdiction in order to determine with what crime the defendant was charged and convicted.

Of necessity, recourse must be had to the information or indictment in the foreign jurisdiction. Frequently a crime which would constitute a felony in the foreign jurisdiction would only be a misdemeanor under the laws of our State.

It has been held that a violation of the Federal Narcotic Laws (Harrison Act) is not a felony under the New York statute, since the penalty for a violation of the similar New York statute is a misdemeanor. (*People* v. *Davis,* 141 Misc. 897.)

A felony under the Federal law may or may not be a felony under our State law. Car burglary under the Federal statute is a felony, but the information was held to be insufficient under the Penal Law. (*People* v. *Knox,* 223 App. Div. 123.)

Criminally receiving stolen property, under the Federal laws, where the value was not alleged in the indictment, though a felony under the Federal laws, was not held to be a felony here. (*People* v. *Voelker,* 222 App. Div. 717.)

The indictment in the Superior Court of Middlesex county, Commonwealth of Massachusetts, charges the defendant as follows: " On the sixth day of March, in the year of our Lord one thousand nine hundred and twenty-nine, at Hudson, in the County of Middlesex aforesaid, did steal twelve shares of stock of the value of more than one hundred dollars of the property of Herman S. Holder. Against the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided."

Chapter 266, section 30, volume 9, of the Annotated Laws of Massachusetts, provides: " Whoever steals, or with intent to defraud, obtains by a false pretense, or whoever unlawfully and, with intent to steal or embezzle, converts or secretes, with intent to convert, the money or personal chattel of another, whether such money or personal chattel is or is not in his possession at the time of such conversion or secreting, shall be guilty of larceny, and shall, if the value of the property stolen exceeds one hundred dollars, be punished

by imprisonment in the State prison for not more than five years or by a fine of not more than six hundred dollars and imprisonment in jail for not more than two years; or, if the value of the property stolen does not exceed one hundred dollars, shall be punished by imprisonment in jail for not more than one year or by a fine of not more than three hundred dollars; or, if the property was stolen from the conveyance of a common carrier or of a person carrying on an express business, shall be punished for the first offence by imprisonment for not less than six months nor more than two and one half years, or by a fine of not less than fifty nor more than six hundred dollars, or both, and for a subsequent offence by imprisonment for not less than eighteen months nor more than two and one half years, or by a fine of not less than one hundred and fifty dollars nor more than six hundred dollars, or both."

Chapter 277, section 39, volume 9, of the Annotated Laws of Massachusetts provides:

" Meaning of Certain Words and Phrases.— The words used in an indictment may, except as otherwise provided in this section, be construed according to their usual acceptation in common language; but if certain words and phrases are defined by law, they shall be used according to their legal meaning.

" The following words, when used in an indictment, shall be sufficient to convey the meaning herein attached to them:   *   *   *

" *False Pretences.*— False representations made by word or act of such a character, or made under such circumstances and in such a way, with the intention of influencing the action of another, as to be punishable.   *   *   *

" *Stealing.   Larceny.*— The criminal taking, obtaining or converting of personal property, with intent to defraud or deprive the owner permanently of the use of it; including all forms of larceny, criminal embezzlement and obtaining by criminal false pretences."

Under the above statute of Massachusetts (Chap. 277, § 39), the former statutes of larceny, embezzlement and obtaining money or property by false pretenses, which were distinct and separate offenses, were merged into one crime.   So that under the statute as it existed in 1929, and as it exists today, a defendant may be convicted of larceny by evidence that would have warranted a conviction upon any one of the three charges.   The Commonwealth is not required to elect which one of the former three crimes it will prove.

The defendant contends that the allegations contained in the Massachusetts indictment are not conclusive, and that this court may receive evidence as to the value of the stock and determine the degree of guilt of the defendant under the Massachusetts convic-

tion, citing *Matter of Cedar* (240 App. Div. 182); *Sims* v. *Sims* (75 N. Y. 466); *People* v. *Rodawald* (177 id. 408).

The contention is predicated upon the dictum in the *Cedar* case. If this contention be upheld, the consequences involved would affect the trial of every information in this State wherein the allegations contained in a foreign judgment of conviction are attacked.

In the *Cedar* case the defendant, after his conviction and sentence as a fourth offender, moved in the Court of General Sessions that he be resentenced as a second offender. The court denied the motion of the defendant, and the Appellate Division, First Department, held that the Court of General Sessions was without power to resentence the defendant, and that as a matter of law the defendant was not entitled to a reconsideration of the sentence imposed upon him in September of 1928, and that any power of the court to reconsider the sentence ended with the termination of the term of the sessions of the Court of General Sessions at which he was thus sentenced.

The term or session of the court which imposed the sentence upon the defendant had long since expired, and the defendant moved for resentence in August of 1932.

The Appellate Division said: " At the trial on the information the burden was upon the People not only to prove that he was the identical person mentioned in the Pennsylvania record of conviction, but that the defendant had been convicted of a crime in Pennsylvania which, if committed in this State, would be a felony."

After deciding the question at issue, the court went on to say: " *It was open to the defendant to show by competent evidence* that, whereas the Pennsylvania indictment alleged the larceny of $400, the amount actually stolen was only $55. The defendant had his day in court. He was tried as to the ' truth ' of the allegations contained in the information. Opportunity was afforded him to rebut the proof offered by the People to show that the crime committed by him, for which he was convicted in Pennsylvania, would be a felony here, if committed here. Not having availed himself of the opportunity thus afforded, the defendant must be deemed to have conceded the truth of the facts as shown in the record of conviction in the Pennsylvania court. He should not now be heard to say that he was improperly tried and convicted under the information. We are, therefore, of the opinion that the courts should not now be called upon to modify or amend the sentence pronounced four years ago merely because a court of a foreign State had attempted to amend the indictment upon which one of the prior convictions of the defendant was based or its court records with respect thereto."

In my opinion the language, "It was open to the defendant to show by competent evidence," must mean competent evidence (evidence of the same type necessary to prove the prior conviction of a felony) that the defendant was not convicted of a crime which would be a felony if committed in this State; that the defendant could have produced at the trial of the information court records — competent evidence to show that the record of conviction was reversed, modified or corrected. Certainly the Appellate Division could not have meant that the Court of General Sessions, at the trial of the information, could or should retry the issues determined in the Pennsylvania court.

To hold otherwise would be to nullify the statute (Penal Law, § 1941), and place upon the People the burden to produce evidence of facts adjudicated in foreign States or countries — in distant lands — whenever a judgment is collaterally attacked, and the People would then be compelled to meet the explanation ready in the mouth of the accused, but perhaps neither available nor within the jurisdiction of the State.

The question in the *Sims* case was whether the statute (2 R. S. 701, § 23) as it then existed (September, 1878), declaring a person sentenced upon a conviction for a felony to be incompetent as a witness, applied to a conviction in another State.

The court there held that such foreign convictions did not disqualify (citing *Commonwealth* v. *Green*, 17 Mass. 515); that the constitutional provision requiring that full faith and credit be given to the records, etc., of other States, did not apply, and was not in its nature applicable to criminal proceedings.

" There is nothing in the Constitution of the United States which prevents such application, or requires that the personal disabilities, such as incompetence to testify, or to vote, which may be imposed upon a person convicted of crime in one State, should follow him and be enforced in all the others."

The court further said: " Assuming that this constitutional provision applies to convictions for crimes   *   *   *   a record of conviction for a crime is not conclusive evidence in a civil action of the facts upon which it was based."

The disqualification has since been removed, and in its place the Legislature enacted section 2444 of the Penal Law, making persons heretofore convicted of a crime competent witnesses, but providing that the conviction may be proved to affect the weight of their testimony.

Since convicted persons have become competent witnesses, the courts of this State have held in criminal prosecutions that foreign

judgments of conviction may be used to impeach the credibility and moral character of witnesses, but that they are not conclusive, and are only *prima facie* evidence of guilt. (*People* v. *Rodawald, supra.*) This view as to lack of conclusiveness is denied in other jurisdictions. (*Lamoureux* v. *N. Y., N. H. & H. R. R. Co.*, 169 Mass., 338; 47 N. E. 1009, HOLMES, J.)

Professor Wigmore, speaking of impeachment of witnesses by proof of the judgment of conviction, holds that a witness may be allowed to explain the circumstances of the offense, because " no issue could be allowed to be joined on the witness' explanations, and thus there would be no security against false statements by him. Nevertheless, having regard to the publicity of one's discredit on the stand and the necessity of guarding against the abuses of the impeachment-process and of preventing the witness-box from becoming a place of dread and loathing, it would seem *a harmless charity* to allow the witness to make such protestations on his own behalf as he may feel able to make with a due regard to the penalties of perjury." (2 Wigmore on Evidence [2d ed.], § 1117. See, also, *People* v. *Michaels*, 168 App. Div. 258.)

In the last analysis, the *Sims* case is authority for (1) that the Revised Statutes declaring a person sentenced upon conviction for felony to be incompetent as a witness does not apply to a conviction in another State; and, (2) a record of conviction of a witness is not conclusive evidence in a civil action of the facts upon which it was based.

But we are not here considering statutes regarding personal disqualifications, impeachment of witnesses or affecting moral character, nor are we attempting to enforce a law or judgment of another State or country, penal in its nature. They are strictly territorial and are only to be enforced in the jurisdiction in which they originated. (1 Greenleaf on Evidence [16th ed.], § 376; Story on Conflict of Laws [5th ed.], §§ 92, 104.)

The statutes being construed here simply affect convictions and judgments rendered within the State. They relate to *punishment* and the *proceedings* under which it is to be determined. The guilt or innocence of the defendant of either crime is not an issue to be determined in this proceeding. (*Graham* v. *West Virginia, supra; People* v. *Gowasky, supra; People* v. *Reese*, 253 N. Y. 89.)

Assuming that the full faith and credit clause has no effect whatever upon judgments in criminal suits, and that in this respect the relation of the States to each other is left wholly unaffected by the Constitution, the Legislature, without doubt, has the power to inflict increased punishment where the first offense took place in a foreign country, as well as where it took place in our own State, **not**

because it has or can give to the courts any jurisdiction over offenses committed in any foreign State or country, but because it has full power over the offense committed here, and may mete out such punishment as the moral delinquency of the offender may seem to require. The first offense, though committed beyond our jurisdiction, may furnish a good reason for punishing the second offense committed within it, to an extent commensurate with the guilty character of the culprit and sufficient to protect the community against further depredation.

Whether or not the full faith and credit clause applies to foreign judgments of conviction, for certain purposes such foreign judgments are admissible. (*Sims* v. *Sims, supra; Commonwealth* v. *Green*, 17 Mass. 515; Story on Conflict of Laws, *supra;* Greenleaf on Evidence, *supra;* 2 Wigmore on Evidence [2d ed.], §§ 1079, 1117.) When offered to show the conviction it is conclusive as to all consequences which flow from it. When offered as to guilt on the question of moral capacity, admissions, character or impeachment of witnesses, it is only *prima facie* evidence.

How much faith, force and credit the courts will give to a foreign judgment of conviction, therefore, depends upon the policy of the State considering the subject or statute under consideration.

The effect given to such judgment of conviction is given, not because of any rule of evidence, but it is rather the loan of the court's executive aid on certain terms to a claimant and not in the nature of a preference, conclusive or presumptive. (2 Wigmore on Evidence [2d ed.], § 1346.)

The statute (Penal Law, § 1941) specifically embraces convictions under the laws of any other State, government or country; by its very terms it recognizes the foreign judgment of conviction.

It is apparent, therefore, that the Legislature intended that the courts give full faith and credit to the records of foreign judgments of conviction in these proceedings, and the effect of these records as against the defendant are to be determined by the same principles as govern foreign judgments in civil suits.

I have been unable to find a case, nor has my attention been called to any decision directly holding that the allegations contained in an indictment of the foreign judgment of conviction may be attacked collaterally. To so hold, as I pointed out, would in effect be placing a burden upon the State whenever called upon to retry an issue which had been adjudicated in a foreign jurisdiction. [4]

Professor Greenleaf says: " The rules of law upon this subject are founded upon these evident principles, or axioms, that it is for the interest of the community that a limit should be prescribed to litigation; and that the same cause of action ought not to be

brought twice to a final determination. Justice requires that every cause be once fairly and impartially tried; but the public tranquillity demands that, having been once so tried, all litigation of that question, and between those parties, should be closed forever." (1 Greenleaf on Evidence [16th ed.], § 522.)

Freeman, in his Treatise on Judgments ([5th ed.], vol. 1, § 393), says: " If it is made to appear that the decision drawn in question was pronounced with jurisdiction and by a court or tribunal properly organized and empowered to hear and determine the matter presented, the same will enjoy immunity from impeachment collaterally whether it emanated from a foreign or sister State court, a Federal court, or a domestic court; a criminal, military or a civil court."

Professor Wharton, speaking of the proof necessary to show prior convictions under habitual criminal statutes, says: " As to the nature of the evidence necessary to establish the prior conviction, it may be stated generally that such proof is to be made by the judgment and record of the conviction * * * and that the State must go further and prove that the defendant on trial, and the person convicted under the record adduced, are one and the same." (2 Wharton Criminal Evidence [11th ed.], § 852.)

The question of the value of property mentioned in an indictment was raised in the case of *People* v. *Voelker* (*supra*), which arose in the County Court in Erie county, where the defendant was tried upon an information charging him with having been convicted of the crime of criminally receiving stolen property in the United States District Court for the Western District of New York, which crime, if committed within the State of New York, would be a felony.

The indictment in the Federal court charged the defendant with criminally receiving and having in his possession 163 cases of spirits and whisky, each case containing twelve quart bottles, but did not fix the value of the whisky.

The district attorney there sought to go behind the allegations in the Federal indictment and prove the value of the whisky to show that the crime of criminally receiving stolen property was over the value of fifty dollars, and would have been a felony if committed in this State at this time (1923).

The Appellate Division, Fourth Department, held that " In such a proceeding the court is confined to the facts charged in the indictment upon which the previous conviction was had." (*People* v. *Voelker*, 222 App. Div. 717.)

It follows, therefore, if the courts of this State are to give effect to judgments of foreign courts referred to in section 1941 of the

Penal Law, it must be held that the conviction, judgment and indictment on which it is based are conclusive against the defendant, provided the court had jurisdiction and the judgment was not obtained through fraud.

I am, therefore, of the opinion that in a proceeding under sections 1941–1943 of the Penal Law the foreign judgment of conviction, the guilt and the allegations contained in the indictment, are conclusive, and the court is confined to the facts charged in the indictment on which the previous conviction was had, and that evidence tending to attack the judgment, guilt or facts contained in the indictment is not admissible.

I cannot agree with the defendant's contention that the information does not contain facts from which the conclusion could be justifiably drawn that the Massachusetts crime would be a felony in this State if committed here. An information takes the place of an indictment. An indictment must contain a statement of the specific crime with which the defendant is charged. The statement of the crime shall contain the name of the crime if it have one. (Code Crim. Proc. §§ 295-b, 295-c; *People* v. *Bogdanoff*, 254 N. Y. 16.)

The charge in the indictment should be so alleged as to be intelligible in its legal requisites, and inform the defendant of what he has to meet. All formal defects should be disregarded that do not prejudice the defendant. (*Gibson* v. *People*, 5 Hun, 542, 544.)

Where an information filed pursuant to sections 1941–1943 charges the defendant with having been convicted of a definite crime in a court of competent jurisdiction on a particular day, which crime, if committed within this State would have been a felony, it is sufficient to inform the defendant what he has to meet on the trial of the information.

Section 285 of the Code of Criminal Procedure provides: " No indictment is insufficient nor can the trial, judgment, or other proceedings thereon be affected, by reason of an imperfection in matter of form, which does not tend to the prejudice of the substantial rights of the defendant, upon the merits."

The fact that the defendant pleaded *nolo contendere* to the Massachusetts indictment or that sentence was suspended and he was placed on probation, or that the restitution directed was less than the amount charged in the indictment does not change the provision that the judgment in the Massachusetts court shall be regarded as a conviction. (Code Crim. Proc. § 470-b; *People* v. *Daiboch*, 265 N. Y. 125; *People ex rel. Cohen* v. *Rattigan*, 157 N. Y. Supp. 1003.)

The cases cited by the defendant with respect to value do not bear out the defendant's contention. I hold that " value " of personal property under the Massachusetts law means the same as " value " in New York, that is, " market value."

The defendant pleaded guilty to the charge of larceny of property of the value of more than $100. The Massachusetts statute defining " larceny " includes common-law larceny, larceny by embezzlement and larceny by false pretenses.

The Massachusetts definition of *larceny* is precisely the same as the definition given to it under section 1290 of the Penal Law of the State of New York.

The defendant contends, however, that under the Massachusetts law there may be situations which would comprise the crime of false pretenses in that State and yet the same set of facts would not constitute a crime in New York, that a misrepresentation of one's intention might form the basis of false pretenses in Massachusetts (*Commonwealth* v. *Morrison*, 252 Mass. 116; 147 N. E. 588), and that it is well established that the false pretenses or representations in this State must relate to a past or present fact and not be the basis of an opinion, promise or profession of purpose. (*People* v. *Cerrato*, 99 Misc. 256; *People* v. *Hart*, 35 id. 182.)

The defendant, however, does not here contend that he was charged nor was he specifically charged with the crime of larceny by false pretenses based on an opinion, promise or profession of purpose. He was charged with larceny in Massachusetts under which the Commonwealth was at liberty to prove that it was common-law larceny, larceny by embezzlement or by obtaining property under false pretenses. He pleaded guilty to the indictment. Such a plea is analogous to a plea of guilty to an indictment containing three counts, in which larceny of the same stock is separately alleged to have been committed by common-law larceny, larceny by embezzlement and by obtaining property under false pretenses. The test is, *was he convicted of a crime* which, if committed in this State, would be a felony, not what it could have been by any possibility.

I, therefore, hold that the crime of larceny of which the defendant was convicted in the county of Middlesex, Commonwealth of Massachusetts, on the 5th day of June, 1931, would be a felony if committed within this State, and that he is a second offender under section 1941 of the Penal Law.

The defendant has indicated that he desires an opportunity to proceed with an application in the Massachusetts court for a correction of the Massachusetts record.

I will give the defendant an opportunity to introduce a proper, competent and authenticated corrected record of the judgment on or before the 11th day of April, 1938, on which date the sentence is set before me.